24-1427, Western District of Missouri, Devin Ledbetter v. B. Helmers It has long been the law in this circuit that the use of gratuitous violence in the course of an arrest or a detention is unconstitutional, and that is exactly what happened in this case. If Mr. Ledbetter's testimony is to be believed, which it must at this stage of proceedings, in a light most favorable to him, he complied with every command that was given. He was in the process of not only did he put his hands up, drop the knife, begin getting on the ground, he had done everything that you would want somebody in that type of police encounter to do. But nonetheless, he was slammed in such a violent manner that he has permanent injuries. In fact, he is still today confined to a wheelchair. And this court has already found fact issues, and these same fact issues need to go back for a retrial. In fact, Judge Shepard sat on... We don't find facts. I understand that. Let me rephrase that more precisely. Identify genuine issues and material fact for a jury. And one of those issues in particular, and this was a Rule 47 opinion, but it affirmed summary judgment where the opinion of the district court found that even if there is some degree of security threat presented by Mr. Ledbetter, there is a fact issue as to the proportionality of the force that was used in this case. And that holding from the district court was affirmed already. If anything, in the course of the trial, the evidence on that proportionality issue was only strengthened because we had an orthopedic surgeon who testified and the... You know, excuse me. I think it's well settled that a district court can reconsider the denial of qualified immunity all the way through the case to a post-verdict motion. And our position is not that qualified immunity can never be reconsidered. It's when there is a determination on qualified immunity, as there was by the district court, with a specific... We don't... If we have an interlocutory appeal that affirms an interlocutory order that the district court can then reconsider, our interlocutory affirmance is not law of the case on the reconsideration. And that's what you're arguing. That's just not... You may have a good argument, but it's not a law of the case argument. Okay. Well, then I'll proceed to... That's my view, but I think it's pretty clear. And I've had this issue probably two or three times in the last year when I've never had it before. So I don't know what's percolating out there, but the bar has a strange idea about this. Yeah. And my understanding of the case law that was cited in the brief, the vote case and the lamp case, is that I agree, qualified immunity can be reconsidered. But what happened here was there was a specific finding by the district court that said, you know, even if X and Y, even if there's a security threat or even if there's resistance, passive or otherwise, there is still a genuine issue of fact for trial related to the proportionality of the force that was used. And that went up to this court, which affirmed... But if a later record satisfies the court that the potential dispute has become undisputed for summary judgment purposes, it can reconsider and change its view. And I thought that's basically what happened here, only it was a jury interrogatory answer that kind of drove the train for the court. And regardless, Your Honor, of whether law of the case strictly applies, this court did endorse or affirm rather the holding of the district court that even if there's the answer to this special interrogatory, even if that's the answer, there's still a fact question related to the proportionality of the threat and then the force that was used. And this court did affirm that ruling. And to the extent, Your Honor, there is a changed record, we would submit that the evidence got far stronger. The first time the district court reviewed qualified immunity, it was on a record presented pro se by Mr. Ledbetter. At the time of trial, there was very detailed scientific testimony about how these kind of injuries could occur. And our doctor compared it to the type of force needed to cause the three injuries to Mr. Ledbetter's hip would be something you'd expect to see from falling off a 10-foot ladder or being in a car versus motorcycle accident or being in a high-speed T-bone collision. So all of that was not even in the summary judgment record that this court said there are fact issues related to, and that was there at trial. I would say the other very helpful distinction between the trial record and the record at summary judgment was the magnitude and number of inconsistencies from the officer's testimony only grew. And as this court's precedent make clear in all trial cases, but in these types of Fourth Amendment cases, they're very fact specific and issues of weight and credibility of evidence and witness testimony go to the jury. In fact, and this is articulated in the brief, Mr. Helmer's, actually we can call it a fib, a lie, an inconsistency, but in seeking summary judgment before Mr. Ledbetter was represented by counsel, submitted an affidavit to the court saying, you know, Mr. Ledbetter didn't comply with my commands. He only dropped the knife accidentally when he stumbled over a root or something to that effect. And he's got two paragraphs in that sworn affidavit submitted to the court at summary judgment that say, he didn't comply with commands at all. He accidentally dropped the knife. And in fact, then in his video deposition used at trial and his live trial testimony, he admitted repeatedly, oh, no, he did comply with commands, just not right away. So I highlight that because there are in the record and highlighted in our brief numerous credibility issues, numerous fact disputes that are the province of a jury to consider when evaluating this evidence. What do we make of the special interrogatories without a verdict? And notice that there's, as I understand, there was no mistrial declared, right? Sort of everybody just sort of kind of threw in the towel. So I don't, I'm curious what your view is on whether it was appropriate, not appropriate, for the district court in taking a new motion for summary judgment, qualified immunity, looking at a more expanded record, should the court have adopted those two findings? And are those two, okay, this is going to be a multi-part question, I guess, but those two findings are also in some ways not consistent. If you are looking at the time the force was actually used, they're both saying he's a threat and he's complying. So I'm just curious, what's your thought on whether the district court had to or was allowed to consider those answers in reassessing a new motion for summary judgment? Yeah, there's several part answer to the question. No, I mean, we thought it was an inconsistent verdict to begin with. It's not even a verdict. It's not even a verdict. Our position was, and this is somewhere in the record, our position was they have to answer, if we don't get a verdict on liability, we don't get to the special interrogatory answers. So our position was that has to happen first and then you answer that. I mean, if it's a defense verdict, then you don't get to those special interrogatory answers. So, no, we don't believe that the special interrogatories should have been considered at this stage. And as we've, as articulated. Did you make that argument to the district court? Did you say you shouldn't consider those? This is like just a whole new set of facts we have to look at given the full trial record? I don't believe, Your Honor, that I made that specific argument. I think the argument was you shouldn't get to those because we don't have a verdict and you need a verdict on liability before you get to these. These are affirmative defenses. And unless we get a verdict on liability, we shouldn't get to that. What was argued and what's argued in the brief here is, even if you use those for a revised qualified immunity analysis, what's really the materiality of those answers in a vacuum? Particularly when the first one in particular, question one, employs a subjective analysis. It says, basically, what was Mr. Helmer's thinking at the time? Did he believe, in his mind, that this guy was a security threat? And all of the case law says that the balancing factors under Graham are an objective test. Wasn't the follow-up question, though, was he reasonable in believing that? And so then they said, yeah. It is. But I think the question there is, does question two cure question one? Because the first part of it is, what's in his head? And then the next question is sort of a predicate that flows from that. And so the jury's really answering was not whether or not there was objectively a security threat, which would be the objective question. Did Mr. Ledbetter pose a threat to security at the time the force was used, is an objective question. So I don't know that I think it gets- Under Graham. Correct. But it's an objective test. And so I don't think that the first question- I think some courts have said it's both. I mean, part objective, part subjective. I think we have, probably. The test overall, at least under Graham, is classified as an objective standard. Objectively reasonable. Right. And so, Judge Kelly, I think to kind of come at a higher level to approach the questions, maybe the easiest path here is to say, irrespective of procedurally, what the court should have done in terms of evaluating these answers to the special interrogatories. If you go back to the district court's first opinion, where the judge said there are issues of fact, even if there's a security threat present, because we have this proportionality that we have to weigh out because these injuries are egregious, and if you take all of Mr. Ledbetter's testimony as true, he was as compliant as he could be under those circumstances. This court affirmed it. Well, now there's a lot more information before the district court and before us, right? I agree. You've got trial testimony. And before you had, I think, summary judgment material, I think. That's correct. Doesn't that make a difference? Yeah, I think it tips the Graham factors even more in favor of Mr. Ledbetter, because we did have Dr. Olive, the orthopedic surgeon, who testified to the extraordinary amount of force that would be needed. Well, where did the district court go wrong evaluating the Wilson factors? Excessive, not excessive. Excessive favors this, favors that. There are a number of things. And that makes the totality balancing ruling. Yeah, I think the totality balancing ruling was skewed, and all of these are identified in the brief. The judge construed the facts not in a plaintiff's friendly version, accepting as true the evidence in Mr. Ledbetter's favor and all reasonable inferences therefrom. It's very much an officer-friendly version of the facts. And when you properly construe the facts, as the court must, whether we're looking at a Rule 50 motion or a Rule 56 motion, that didn't happen. I question whether there isn't enough evidence even under an officer-friendly version of the facts, because there are a lot of favorable contradictions and admissions. But certainly there is a clear error in construing facts in the officer's favor. Well, post-trial, when we've had a verdict for a plaintiff, and the post-verdict motion, JAM for qualified immunity, which the court can grant because it's a question of law, this officer-friendly view of the facts, I mean, we've had a trial now. The summary judgment litany about, officer, you have to be, you have to have, construe all the facts in favor of the non-moving party. Where does that, what case do we have that says how you do that when it's a post-verdict? Well, we don't have a, step one is we don't have a verdict. No, we have, but it's post-trial. So this is more akin to a Rule 50. This is actually more neutral than a post-verdict when there's been a verdict for plaintiff. Correct. We have all the trial evidence, and the jury's hung. So it seems to me we, the platitudinous, you have to view the facts in favor of the non-moving party changes. No, I don't think that. I don't know what the case law says, but it's a different perspective. It's a different standard, but if, so if we treat it. Okay, so officer-friendly view of the facts, that's no longer a clear violation. No, it is, because. Oh, you just said. No. You just said the standard changes. What is the new, what is the post-trial standard? Well, I think that's sort of a two-part answer. One, are we considering this to be a verdict because there actually wasn't one. And I would say under those circumstances, it's most analogous to Rule 50. At the close of all of the evidence, you construe all of the evidence in favor of the plaintiff.  And if no reasonable jury, construing all the evidence and inferences. This is a less favorable environment, if you will, for the plaintiff. At which stage? All the facts are in it, and the jury couldn't find, didn't find for the plaintiff. Right, so I think, Your Honor, we're either back to Rule 50 or closer to Rule 56, because we never got to it. We never got to a verdict. I don't, well, I don't think the case, I don't even know if the cases address that anywhere. Any circuit has addressed it. But I suspect they haven't just said, okay, now we're back to Rule 56 posture. I think it's most analogous. Because we did the same. I think it's most analogous to Rule 50. You have all of the evidence in. You don't have a verdict from the jury. If you have a case that says that, that would be helpful. I can look for one, Your Honor. No, no. We do the looking now. All right. Thank you. I see I've used up all of my time. Thank you. We would ask that the Court reverse. Mr. Holman. May it please the Court. I think where I'd like to start on the qualified immunity issue is an aspect of the qualified immunity analysis we haven't discussed yet today. And that's what the clearly established law provided at the time of this incident. And as the district court recited in their order, and it's consistent with the authority cited in my brief, when qualified immunity is at issue, it's the plaintiff who has the burden of actually bringing forward those controlling cases that are supposed to have put the officer on notice as to what the clearly established law was at the time of the use of force in question. And so where I'd like to start today is looking at those cases that the plaintiff actually put forward as proffering the clearly established law. And there are three primary ones that the plaintiff relied on. Two of which, we start with the McReynolds versus, and I'm not sure if I'm pronouncing this right, Schmidly decision, and then there's the McIntrysh versus the Pulaski County Sheriff's Department decision. Those cases were both actually decided sometime after the incident in question in this case. The incident in question in this case happened in December of 2020, and those opinions were both published in 2021. So neither of them were actually capable of putting Officer Helmers on notice of anything at the time that this incident occurred. Even if they could have, where I struggle with these, and the same will be true when we get to the third case, plaintiff sides, which is Brown versus City of Golden Valley. I don't think those are analogous opinions because those opinions specifically cite the lack of a threat at issue, or at least potential lack of a threat at issue is a disputed issue of material fact. And I think that I appreciate your qualified immunity argument on the clearly established prong, but particularly in an excessive force case, the facts are very important. And I think, for me anyway, I land back in this morass of how do we figure out the facts? What do we do with those, the interrogatory answers? Is the district court bound by those? Are those guides? Did she have to consider them? I feel like once you've got this whole new trial of evidence presented, but no verdict, it's quite unusual situation. And I think that the facts for both the first prong and the second prong are very important because you need to know facts before you know whether that was clearly established. I agree it is unusual. And from a procedural standpoint, there may be one out there I couldn't find. I'm aware of no cases where the jury failed to reach a verdict on the liability issue, so you have a potential mistrial on the underlying issue. And why wasn't there a mistrial declared? Well, to be honest with you, Your Honor, I think it may have been an oversight. You know, I think we were all of the understanding that that's what had happened when I think in the moment maybe didn't appreciate that the record wasn't there. Because I wonder if it was a mistrial, and I don't mean to be dancing on the head of a pin here, but if it were a mistrial, would we be in a different situation? In other words, a mistrial is a mistrial. Whatever happened or didn't happen, we've just got to start over because that was bungled. And I don't know that there is authority out there that answers that question. I've not seen any. You know, my position certainly is special interrogatories were answered unanimously. And so I think the district court was correct in crediting those when she redid the qualified immunity analysis. The tough question that may come in some future case, if we have to retry this, does the second jury get to reconsider the same special interrogatories that a first jury has already found unanimously? And, again, I'm not aware of any. Yeah, that sounds unusual. It does. And it's also unusual. I don't know that it's prohibited. But it's unusual to have a jury-judge combo in your ultimate resolution, right? You've got the full trial. You've got some things answered by the jury, which are kind of, I mean, you could say contradictory in a way. It can be difficult to reconcile. And then the district courts are filling in some of the other factors. So it's just an unusual situation for coming to facts. Circling back to the original question here, it's an unusual way to get to facts for this very important analysis of the two prongs for qualified immunity. I agree. I think there's always some level of that. Because even if there had been a verdict and the special interrogatories had been answered, assumed for the sake of argument they were answered the same way this jury did, it's still the judge making a legal determination on the facts the jury found does qualified immunity apply. And in that sense, it's not that unusual. That's the purpose of the special interrogatories. When there are disputed issues of fact that preclude summary judgment, it's a way of allowing the jury to resolve those disputed factual issues, but reserving the legal analysis of qualified immunity to the court. And that's the Luttrell v. Franklin case, which actually said it's error to submit the legal analysis to the jury, that that has to be done by a judge. The questions the jury should be considering are the factual ones. And I think on this, where the facts were resolved unanimously by the jury, even where they didn't reach a unanimous verdict on liability, I think the district court was correct in crediting those in redoing the qualified immunity analysis. Do you think she had to? I do. But again, I'm not aware of a case that presents this precise situation. But I think I treat those as unanimous decisions of the jury that are entitled to great weight. So, yeah, I think at that stage, to put it maybe a little more plainly, that was the whole purpose of asking them in the first place, was to try and get some resolution on the qualified immunity question, which was still unresolved post-summary judgment, because it was denied based on disputed issues of material fact that still need to be resolved. And I think where you had a unanimous resolution of those disputed issues of fact, I do think she... But not all of the ones, right, that needed to be. Well, they resolved all the special interrogatories. They didn't resolve them all in favor of Officer Helmers. But I think the threat question that they found is sufficient, because when you dig in the cases, it's true for McReynolds, it's true for McIntrysh, it's true in Brown v. City of Golden Valley. There are citations in each of those cases where there's at least a possibility that there was no threat present. And so I don't think cases that lack a threat can establish the clearly established law for a case that does involve a threat. What about your counsel's argument about proportionality, whether that's still up in the air? And I looked at the docket, and I saw the jury's concern about, I think, why they were hung on, and it was about the force itself. Yeah. So what I would say at this stage is the district judge on that proportionality question actually balanced that in favor of the plaintiff, yet even giving the plaintiff that weight on the balancing test still found that the use of force was reasonable when you bring the other factors into it. So the proportionality question in the district... The Wilson factors are not jury questions. No, I agree with that. They're elements of the legal analysis. Yes, I agree with that. The district court can choose to have some or none or all of the factors subjected or guided, seek help from the jury on all, some, or none. Agreed, agreed. And I think, again, there was not a question related to proportionality to that point, but the district court's order weighed that actually in favor of the plaintiff and still found that the force was reasonable, even giving the plaintiff credit for that one factor, and that's where it is. You look at these in totality. It's a balancing test, but it is a legal test, to Your Honor's point, that the judge performs. So I don't think there's a proportionality question left unresolved at this point because that was actually resolved in favor of the plaintiff, yet we still got to, on the qualified immunity, the district court found first and foremost that the force used was reasonable, even considering that proportionality question. It was still reasonable force before we even get to the clearly established issue. But I think when we're at the clearly established part of the test, there are few cases that deal with the same set of facts here. You know, we've used the term unusual a number of times. I do want to note that that first interrogatory, and this may feel like a fine hair to split, but I don't think it is. The jury did not find that Mr. Ledbetter was compliant. They found that he was not resisting. They did not perceive him to be resisting arrest at the moment force was applied. And I don't know that that's the same as finding he was fully compliant. He simply, in their view, was not resisting arrest. There's scant cases that deal with a threat that don't also have some level of resistance. And certainly in my brief, I've tried to find the ones I can in order to give weight to the jury's unanimous resolution. And I've tried not to rely on cases that fail in some level of resistance where the jury didn't find that here. But we get to so few cases that deal with a threat without also analyzing resistance that there may not be any clearly established law in this particular unusual set of circumstances, but certainly the ones that are out there found in favor of qualified immunity. Well, you had threat cases where the use of force precluded the threat from being carried out. Correct. And that, I think most predominantly, that's the Kelsey v. Hughes Supreme Court case where there was no resistance because of the distance. The officers and the suspect at that point were actually separated by offense. So the officers weren't capable of attempting to effect an arrest yet. And they shot that suspect through the fence. We had the guy on the porch case. Was it Cook? I don't know. We had the guy with a machete out in the street. Off the top of my head, I'm not sure which one. We never got to implement, if you will, the threat.  Because the force precluded it. Agreed. And, you know, the other one I think is important because it probably cuts the closest factually. Although, again, there are some distinguishing factors. The Jose v. City of St. Paul question where force was applied and it was physical force as we have in this case. The force was applied after the arrestee had begun to comply with officers' directives to get down. But because he was not subdued yet, not down yet, the court in Jose found that the officer could have perceived an ongoing threat to safety even after initial steps towards compliance had began. And I think factually that's the closest case that we can find. Because, again, here, unlike Jose, where you had officers directing the arrestee to get down and he had started to do that. The son in Storshak is pretty close. Which one's that? I think the name was Storshak, the father and son where the son was finally tased in the squad car. Oh, yeah. I don't recall that one. Because he was so threatening. Right. And I think here, different from Jose on that arrestee getting down, which is kind of our situation, our testimony from trial was actually that Officer Helmers was not directing Mr. Ledbetter to get down. In fact, he didn't want him to get down right there. He wanted to actually separate him from the knife because he didn't want Mr. Ledbetter on the ground within reaching distance of the knife. So Mr. Ledbetter's testimony that he was in the process of going down, that actually would have been in contradiction to Officer Helmers' orders, which I think would have heightened the perception of a threat that, in my view, the jury rightly found. But I have found no cases, and certainly plaintiffs having the burden to point the court to the clearly established law, I have found none that involve a safety threat that would find this sort of physical takedown maneuver to separate a suspect from their knife, to bring a potentially dangerous suspect into custody, has been found to be excessive force, and certainly none that excessive force in a way that was clearly established at the time. Counsel, unusual procedural posture, everybody has discussed that. But just to clarify and get that exactly what happened out of the way, it's my understanding that after the jury could not reach a general verdict, that the parties agreed to submit briefing on the qualified immunity issue in light of the special interrogatories. Yes. Is that right? That is my recollection. Secondly, the parties agreed to file the motions separately from Helmers' motion for judgment based on evidentiary sufficiency. Correct. And that was to separate out the qualified immunity analysis from the sufficiency of the evidence. So my point is, wherever we are, whatever happened here, as unusual as it may be, all of this is by agreement of the parties. I agree with that. And I'd even, I'd go a little step further. I think we all understood what we were trying to accomplish, even if we didn't maybe make the record as clear as we could have. I think we all understood on the liability question that that was a hung jury mistrial situation. But we were all treating those jury interrogatories as binding decisions of the jury. At least that's my understanding of what we were doing. And that's why it played out the way it did. I see my time's expired. I thank you. Thank you. I think we used some of your time, so I'll give you a minute for rebuttal if you'd like. I appreciate that, Your Honor. I think I used my time and then some. To Judge Shepard's question, obviously the plaintiff didn't want them to file a renewed motion for qualified immunity. They made clear their intent to do so. So, yes, we agreed to a briefing schedule. We did take the position that without a verdict on the general liability that the jury shouldn't reach the special interrogatories. But the motion was forthcoming, so obviously. Say that again.  Our position was since the qualified immunity is functionally an affirmative defense, without a general verdict, the jury shouldn't answer the qualified immunity questions was the position that we had initially taken. But no question we agreed that we should have a briefing schedule because I knew he was planning to file another motion. I think at bottom, this case comes down to, again, the whole proportionality issue. And the proportionality issue was affirmed by this court as a question that should go to a jury irrespective of whether there was some safety threat. Because even if there's some safety threat, the magnitude of that threat bears on the amount of force. I would also say on whether or not the law was clearly established, we've cited about six or seven cases in the brief that address this. Thank you. We would ask for a new trial. Thank you, Counsel. The case has been well briefed and argued. The argument's been helpful. A lot of excess force cases. So the issues are familiar, but they're almost always hard and complicated to work through. And so we will take it under advisement and do our best. And you have done well. Thank you, Your Honor.